Filed 10/17/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ERIC A. JONES,<br><br>  Defendant and Appellant. | A149431<br><br>(San Francisco County<br>Super. Ct. Nos. 225643, 225785) |

A jury found defendant Eric A. Jones guilty of multiple counts of second degree burglary of a vehicle and additional offenses arising from a series of car break-ins throughout San Francisco that occurred over a 17-month period.

The trial court instructed the jury that if it found Jones committed one or more of the charged auto burglaries (along with one uncharged auto burglary) by a preponderance of the evidence, it could consider that evidence in deciding identity and intent to commit theft for the other charged crimes. The instruction reminded the jury that the prosecution had to prove each charge beyond a reasonable doubt.

Jones contends this instruction had the effect of lowering the prosecution's burden of proof, and was structural error requiring automatic reversal under *People v. Cruz* (2016) 2 Cal.App.5th 1178 (*Cruz*). We conclude the challenged instruction should not have been given, but there was no structural error. We further conclude any error in giving the instruction was harmless, and therefore we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Auto Burglary at Best Buy*

On the afternoon of September 24, 2014, William Tam parked and locked his car in a Best Buy parking lot in San Francisco. In the back seat of the car was a backpack

1

containing a medium-size black North Face jacket. When he later returned to his car, Tam found the rear side window was smashed and his backpack was missing.

Surveillance video of the Best Buy parking lot recorded that afternoon showed a black Mercedes Benz SUV parked in a parking space, and then a man in a black Nike sweatshirt getting into the back seat of the SUV on the passenger side. The SUV drove to a different parking aisle and backed into a parking space next to a parked car with intact windows. The doors on the passenger side of the SUV opened, and the backseat passenger got out of the SUV and then got back in. The SUV pulled away, and at that point, surveillance video showed that the rear passenger side window of the nearby parked car was broken. At trial, a Best Buy asset protection employee who had seen defendant Jones inside the store the day of the break-in identified Jones as the man in the black Nike sweatshirt seen in the surveillance video getting in the back seat of the black SUV. Two San Francisco police officers also identified Jones as the man in the black Nike sweatshirt in the surveillance video.

The day after the auto burglary, the black SUV (identified by its license plate number) was found parked on Turner Terrace within a few yards of Jones's residence.[1] Police also found a Nike sweatshirt and Tam's North Face jacket in Jones's residence.

*Auto Burglary at Alemany Farmer's Market*

On the morning of August 1, 2015, Mabel Zhen parked and locked her van in the parking lot of the Alemany Farmer's Market, leaving her purse, containing about $2,000 in cash, on the floor of the van. When she returned to the parking lot after a few minutes, she saw Jones standing by her van. She ran to her vehicle and discovered that the window was smashed and her purse was gone. Jones—holding Zhen's purse—hid behind a tree, then ran to a silver car and got in the driver's seat.

---

[1] Jones lived in the Potrero Hill neighborhood; a police officer estimated the housing complex where he lived had roughly 100 units.

Jason Albertson also witnessed Jones, who had dreadlocks and was wearing an orange high visibility vest, break the window of Zhen's vehicle. Albertson saw Jones drive away and memorized the getaway car's license plate number. He called 911.

Officer Patick Faye was familiar with Jones from previous contacts and knew Jones was often in the Turner Terrace area. When he heard the report of the farmer's market auto burglary involving a late model silver vehicle with license 7LSD919, Faye recalled that he had stopped Jones in a vehicle that almost matched the description. Faye drove to Turner Terrace, where he found Jones parking a silver Acura with license 7LFD919. Jones had over $1,000 in cash in his pockets, and there was an orange high visibility vest in his car. In a cold show conducted the day of this auto burglary, Zhen and Albertson both identified Jones as the person who had broken into Zhen's van.

*Auto Burglary and Threat to an Officer at Twin Peaks*

On the afternoon of September 7, 2015, Officer Steven Spagnuolo was conducting auto burglary surveillance in the Twin Peaks area. Spagnuolo, in plainclothes and in an unmarked police vehicle, noticed Jones crouched down against the side of a parked car. He recognized Jones from prior contacts and investigations. Jones placed something against the driver's side rear window of the parked car and pressed forward, and the glass shattered. Jones reached into the car and pulled out three bags.

Spagnuolo, wearing his police department star on a chain around his neck outside his clothes, pulled his firearm and yelled, "Stop. Police." He grabbed Jones, but Jones broke free and headed toward a gray car with its passenger door open. Jones reached the car, Spagnuolo grabbed Jones's leg, and Jones yelled, "go." The gray car took off, and Spagnuolo ended up with Jones's shoe.

When Jones was later arrested for the Twin Peaks auto burglary, his cell phone was searched, and his own texts appeared to describe the Twin Peaks incident. Jones had texted, "I did some hot" "SHXT," "I had to fight one of them off me . . ." "in the car," "The police almost broke my leg . . .," and "I really had to fight him off me."

3

*Auto Burglary at Taco Bell*

On November 6, 2015, Victor Konovalov parked and locked his car at a Taco Bell parking lot. Later, the rear window on the driver's side was shattered, and his laptop bag was missing.

Taco Bell surveillance videos taken inside the restaurant and outside in the parking lot that day showed a person enter the parking lot in a white SUV, park, go into the restaurant, and order food. The person later walked out into the parking lot, crouched down, broke into a car, took items from the car, and then returned to the SUV.[2] Three individuals—two San Francisco police officers familiar with Jones and Jones's San Mateo County probation officer—identified Jones as the person seen in the Taco Bell surveillance video breaking into a car.

Another San Francisco police officer, Anthony Scafani, recognized the white SUV used in the Taco Bell break-in, and he later found the vehicle (a Ford Explorer) parked near Turner Terrace. Scafani noted the Ford Explorer had Texas plates, license number DFR6310. The officer previously had seen the Ford Explorer in late October or early November 2015 in same area near Turner Terrace.

*Auto Burglary at Mel's Drive-in*

On February 27, 2016, a couple reported their car had been broken into at Mel's Drive-In. Surveillance video of the parking lot recorded on the day of the break-in showed a person break into a parked car and drive away in a silver Acura with license 7NJX123. Officer Louis Hargreaves, who had seen Jones more than 100 times, recognized Jones as the auto burglar in the surveillance video. He also recognized the Acura, and he had seen Jones driving the car five times. Another officer familiar with this car had seen Jones driving the car on two occasions.[3]

---

[2] There was also a passenger in the SUV, who accompanied the driver into the Taco Bell.

[3] Another time, this officer saw the Acura driven by a different person. Jones was not the registered owner of the car.

*Defense*

A district manager for a car rental agency in Oakland testified that Sonja Reid rented a Ford Explorer with Texas license DFR6310 on October 31, 2015, and the vehicle was returned on November 9, 2015. Careem Conley testified as an expert in the San Francisco African-American community. He said hoodies and graphic T-shirts are popular in the community, brands including North Face and Nike are popular, and "[p]robably the most popular [hairstyle] is dreadlocks, braids." Scott Fraser testified as an expert in eyewitness recognition and identification. He testified that studies show people "are less accurate in identifying members of another race than members of [their] own race." He also agreed that "poor quality video" would negatively affect a witness's ability to identify a person seen in the video.

The jury found Jones guilty of five counts of second degree burglary (Pen. Code, § 459; counts 1, 3, 6, 9, 15), one count of grand theft of property (*id*., § 487, subd. (a); count 10), two counts of driving without a license (Veh. Code, § 12500, subd. (a); counts 4 and 12), two counts of possession of burglary tools (Pen. Code, § 466; counts 5 and 14), and one count of threatening an officer (*id*., § 69; count 8). In a bifurcated proceeding, the trial court found that Jones had been on bail when he committed some of the later offenses (*id*., § 12022.1, subd. (b)).

The trial court imposed a 68-month sentence. Jones was ordered to serve the first 36 months of the sentence in county jail, and placed on mandatory supervision for the concluding 32 months.

## DISCUSSION

Jones's only contention on appeal is that the trial court erred in giving an instruction that permitted the jury to use evidence of the five charged auto burglaries, if proven by a preponderance of the evidence, to show intent and identity as to the other charged offenses. Jones claims the instruction had the practical effect of lowering the prosecution's burden of proof, and the error was structural, meaning reversal is automatic. We disagree.

5

A.      *Legal Principles: the Prohibition on Propensity Evidence and the Admissibility of Prior-Conduct Evidence For Other Nonpropensity Purposes*

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159 (*Villatoro*); Evid. Code,[4] § 1101, subd. (a).) Character evidence includes "evidence of specific instances of [a person's] conduct." (§ 1101, subd. (a).)

Our Supreme Court has explained that propensity evidence is prohibited not because it is irrelevant, but because it " ' "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence . . . is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 300.)

Section 1101, subdivision (b) (§ 1101(b)), however, clarifies that evidence of a person's conduct is admissible when that evidence is relevant to demonstrate a fact other than character or propensity, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." (§ 1101(b)); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) When evidence of a defendant's conduct is admitted for a relevant purpose under section 1101(b), the defendant may request (and upon such request, the trial court must give) an instruction explaining to the jury the limited purpose of the conduct evidence. (§ 355; see CALCRIM No. 375.)

Our high court has recognized that section 1101(b) "applies not only to evidence of uncharged misconduct [citations], but also to evidence (already admitted) of charged offenses." (*Villatoro*, *supra*, 54 Cal.4th at p. 1161.) When evidence of a person's conduct is admitted under section 1101(b), the jury may consider the evidence if it is proven by a preponderance of the evidence. (*People v. Leon* (2015) 61 Cal.4th 569, 597.)

---

[4] Further undesignated statutory references are to the Evidence Code.

B.       *The Challenged Jury Instruction*

Here, the prosecution requested a modified version of CALCRIM No. 375 (on evidence of an *uncharged* offense to prove identity, intent, common plan, etc.), which permitted the jury to consider evidence of each of the five *charged* auto burglaries (as well as evidence that Jones was convicted of an uncharged auto burglary in San Mateo County) to show, pursuant to section 1101(b), identity and intent as to the charged offenses.  Defense counsel objected to the proposed instruction, arguing it would confuse the jurors to be given two different standards of proof for the charged auto burglaries (preponderance of the evidence to consider the evidence for section 1101(b) purposes, and beyond a reasonable doubt to decide whether Jones was guilty of each charge).  The trial court ordered that the prosecution's proposed instruction be given.[5]

The jury was given the following instruction now at issue: "The People presented evidence that the defendant committed Second Degree Burglary in San Mateo that was not charged in this case, and five offenses of Second Degree Burglary in San Francisco that were charged in this case.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offense.  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden, you must disregard this evidence entirely.

"If you decide that the defendant committed the offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether:

"The defendant was the person who committed the offenses alleged in this case; or

"The defendant acted with the intent to commit theft in this case.

---

[5] We note that on appeal, Jones does not challenge the trial court's ruling that the evidence was relevant to determining identity and intent under section 1101(b).

7

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses. [¶] Do not consider this evidence for any other purpose except for the limited purpose of identity or intent. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed another charged offense or committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Second Degree Burglary and/or Grand Theft of Personal Property. The People must still prove every charge beyond a reasonable doubt."

C.    *Analysis*

Jones stakes his entire claim on *Cruz*, *supra*, 2 Cal.App.5th at pages 1186–1187, in which the Court of Appeal held it was structural error for the trial court to instruct the jury that it could use the defendant's charged sexual offenses proven by a preponderance of the evidence to infer the defendant had a propensity to commit, and did commit, other charged sexual offenses.

*Cruz* involves sexual offenses and propensity evidence allowed under section 1108. The Legislature has created specific exceptions in the Evidence Code to the general rule against admitting character evidence. (See *Villatoro*, *supra*, 54 Cal.4th at p. 1159 [noting statutory provisions allow character evidence in cases involving sexual offenses, domestic violence, and elder abuse].) Among those exceptions, section 1108, subdivision (a), permits admission of "evidence of the defendant's commission of another sexual offense or offenses . . ., if the evidence is not inadmissible pursuant to Section 352" when the defendant is charged with a sexual offense. None of the statutory exceptions to the prohibition against propensity evidence applies to any of the charged offenses in Jones's case, however.

The Attorney General responds (1) *Cruz* is not controlling, (2) *Cruz* was wrongly decided, and (3) even assuming the instruction in this case was given in error, the error was harmless under *Chapman v. California* (1967) 386 U.S. 18.

8

We conclude *Cruz* is distinguishable, but the challenged instruction in this case was flawed. We further conclude any error was harmless under *Chapman*.[6]

In finding instructional error, *Cruz* relied exclusively on our Supreme Court's decision in *Villatoro*, *supra*, 54 Cal.4th 1152. (*Cruz*, *supra*, 2 Cal.App.5th at p. 1186). So before we discuss *Cruz*, we examine *Villatoro*. There, Villatoro was charged with various sex offenses against five women committed over a three-year period. (*Villatoro* at p. 1156.) The trial court "instructed the jury with a modified version of CALCRIM No. 1191 [evidence of uncharged sex offense], which permitted the jury to use evidence of defendant's guilt of one of the charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses." (*Id*. at p. 1158.)

Villatoro's primary claim on appeal was that this instruction was incorrect because section 1108 applies only to evidence of *uncharged* sexual offenses. (*Villatoro*, *supra*, 54 Cal.4th at p. 1156.) Our high court rejected this claim, holding section 1108 applies to evidence of both uncharged and charged offenses. (*Id*. at p. 1164.)

Villatoro next argued the modified instruction was inadequate because it "failed to designate clearly what standard of proof applied to the charged offenses before the jury could draw a propensity inference from them," and "without such guidance, a juror could have used any standard of proof, or no standard at all, to convict him based on even a minimal amount of evidence supporting another sexual offense, thus depriving him of the presumption of innocence." (*Villatoro*, *supra*, 54 Cal.4th at p. 1167.)[7] The court was not persuaded. (*Ibid*.)

---

[6] Because *Cruz* is distinguishable, we need not address the Attorney General's argument that the case was wrongly decided.

[7] The jury in *Villatoro* was instructed, in part, " 'If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove

9

The *Villatoro* court explained, "Unlike the standard pattern instruction CALCRIM No. 1191, which refers to the use of uncharged offenses, the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof. [Citation.] Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption. The modified version of CALCRIM No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence." (*Villatoro*, *supra*, 54 Cal.4th at pp. 1167–1168.)

The court's holding in *Villatoro* was circumscribed. The court concluded, "[U]nder the facts of this case, the trial court did not err in giving the modified instruction. We do not decide, however, whether courts should give such an instruction in the future." (*Villatoro*, *supra*, 54 Cal.4th at p. 1169.) Thus, our high court did not expressly approve the use of a propensity instruction like the one given in *Villatoro* for all cases involving multiple charges of sexual offenses.[8]

With this background, we consider *Cruz*. In that case, Cruz was charged with committing a lewd act upon a child under age 14 against three victims. (*Cruz*, *supra*, 2 Cal.App.5th at pp. 1180–1181.) The jury was instructed that it could consider any

---

each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge." (*Villatoro*, *supra*, 54 Cal.4th at p. 1167.)

[8] We note that there are now separate CALCRIM jury instructions for use of evidence of uncharged and charged sex offenses. CALCRIM No. 1191A applies to uncharged offenses and specifies a preponderance-of-the-evidence standard of proof for the evidence to be used to infer propensity to commit sex offenses; CALCRIM No. 1191B applies to charged offenses and specifies a beyond-a-reasonable-doubt standard of proof in order to use the evidence to infer propensity.

10

charged offense to show Cruz had a disposition to commit sexual offenses if the jury found he committed the charged offense by a preponderance of the evidence. (*Id*. at p. 1184.)[9] Cruz argued the instruction was improper in stating that the standard of proof for considering the charged offenses as propensity evidence was preponderance of the evidence. The Court of Appeal agreed. (*Ibid*.)

The *Cruz* court reasoned, "*Villatoro* did not expressly hold that currently charged offenses must be proved beyond a reasonable doubt before they can be used to show a propensity under Evidence Code section 1108, but it strongly implied that rule. It relied on an instruction requiring such proof to refute the defendant's argument that there was a risk the jury applied an impermissibly low standard. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1167–1168.) [¶] It would be an exaggeration to say the task required of the jury by the instruction given in this case . . . was logically impossible. . . . But it is not reasonable to expect . . . lay jurors [to be able to follow the instruction]." (*Cruz*, *supra*, 2 Cal.App.5th at p. 1186.)

The *Cruz* court concluded, "We believe that, for practical purposes, the instruction lowered the standard of proof for the determination of guilt. In our view, a jury instruction explaining the use of currently charged offenses to show propensity under Evidence Code section 1108 must resemble the instruction used in *Villatoro* in specifying that a currently charged offense must be proved beyond a reasonable doubt before it can

---

[9] The instruction in *Cruz* provided in pertinent part: " 'If you find, by a preponderance of the evidence, that the defendant committed any such other sexual offense you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. [¶] If you find that the defendant had this disposition you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused. [¶] However, even though you find by [a] preponderance of the evidence that the defendant committed another sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes you are determining. [¶] If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes that you are determining. [¶] You must not consider this evidence for any other purpose.' " (*Cruz*, *supra*, 2 Cal.App.5th at p. 1184.)

11

be used as propensity evidence in support of another currently charged offense." (*Cruz*, *supra*, 2 Cal.App.5th at p. 1186.)

Even though the jury in *Cruz* was also instructed that the charged offenses had to be proven beyond a reasonable doubt, the court found "the combination of that instruction with the preponderance instruction for charged offenses produced a hopeless muddle." (*Cruz*, *supra*, 2 Cal.App.5th at p. 1186.) The *Cruz* court further held the instructional error was structural and therefore reversible per se. (*Id*. at p. 1187.)

The Attorney General argues *Cruz* is not controlling because that case involves an instruction on propensity evidence under section 1108, while the instruction here involves nonpropensity evidence under section 1101(b). We agree that the instruction in *Cruz* is distinguishable from the instruction given in this case because propensity evidence is significantly different from evidence considered for a limited, nonpropensity purpose under section 1101(b).

As we have seen, the jury in *Cruz* was instructed that if it found the defendant committed a charged sexual offense by a preponderance of the evidence, the jury could infer he had a disposition to commit sexual offenses, and could use this disposition "*to infer that [the defendant]* was likely to commit and *did commit the crime or crimes of which he is accused*." (*Cruz*, *supra*, 2 Cal.App.5th at p. 1184, italics added.) The jury was told, in other words, that it could use evidence that the defendant committed a charged sex offense established by a preponderance of the evidence to directly infer that the defendant was guilty of other charged sex offenses. The *Cruz* court found this instruction had the practical effect of lowering the standard of proof for the determination of guilt. (*Cruz*, *supra*, 2 Cal.App.5th at p. 1186.)

But the instruction in this case is different. Here, the jury was instructed it could "consider" the evidence that Jones committed the charged auto burglaries for "the limited purpose" of determining one element of the charged offenses (intent) and one finding (identity, which is not an element of the offenses (*People v. Ledesma* (2006) 39 Cal.4th 641, 721)). Unlike in *Cruz*, the jury was *not* told it could use the evidence of the charged offenses proven by a preponderance of the evidence to infer Jones had a propensity to

12

commit and did commit the charged offenses. To the contrary, the jury was admonished, "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."[10]

The difference between the *Cruz* instruction and the instruction given in this case reflects the difference between propensity evidence and section 1101(b) evidence. Recall that propensity evidence is generally prohibited because of the risk such evidence will confuse jurors, unfairly surprise defendants, and cause undue prejudice. (*People v. Jackson*, *supra*, 1 Cal.5th at p. 300.) The Legislature, however, has decided that statutory exceptions to the general prohibition on propensity evidence are warranted in certain limited cases, including cases involving sexual offenses.[11] But Jones's case does not involve section 1108 or any other statutory exception that would allow the jury to use evidence of charged offenses to find a propensity to commit other similar offenses. Instead, the jury was instructed that it could use the evidence of the charged auto burglaries (if proven by a preponderance of the evidence) only for limited, nonpropensity purposes under section 1101(b), and the jury was specifically instructed not to conclude that Jones was disposed (i.e., had a propensity) to commit crime. The instruction,

---

[10] Jones tries to analogize the challenged instruction to the *Cruz* instruction by asserting the trial court here "instructed the jury that it could consider evidence of one charged offense, proven only by a preponderance of the evidence, to prove [Jones] intended to and *did commit the other charged offenses*." (Italics added.) But this is a mischaracterization of the instruction. The jury was never told it could use the evidence of the charged auto burglaries to infer directly that Jones "did commit the other charged offenses."

[11] In cases decided before section 1108, our Supreme Court had suggested " 'propensity' evidence is per se unduly prejudicial to the defense," but section 1108 "implicitly abrogates" those prior decisions in cases in which a defendant is charged with a sexual offense. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911.) "[T]he Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (*Id*. at p. 915.)

13

therefore, did not present the risk of confusion, unfair surprise, and undue prejudice inherent when a jury is allowed to use evidence of prior conduct to infer propensity.

Despite the differences between the instructions, Jones argues that the challenged instruction in this case, like the instruction in *Cruz*, had the effect of lowering the prosecution's burden of proof. We are not persuaded. As we have described, the instruction here did not allow the jury to use the evidence of charged auto burglaries proven by a preponderance of the evidence to directly infer that Jones committed other charged offenses. And the instruction concluded with the admonition, "The People must still prove every charge beyond a reasonable doubt."[12] We conclude the instruction did not have the practical effect of lowering the standard of proof.

We do not mean to imply that we approve of the jury instruction given in this case, however. In *Villatoro*, three justices dissented and concurred. (*Villatoro*, *supra*, 54 Cal.4th 1152, 1169, 1182 (conc. & dis. opn. of Corrigan, J., joined by Werdegar J. and Liu, J.) Justice Corrigan found the instruction in *Villatoro* "seriously flawed" (*id*. at p. 1182 (conc. & dis. opn. of Corrigan, J.)) and "sows the seeds for confusion and unintended consequences" (*id*. at p. 1169 (conc. & dis. opn. of Corrigan, J.)).[13] We believe the instruction given in this case may be one of the "unintended consequences" Justice Corrigan predicted.

---

[12] We recognize the *Cruz* instruction stated, " 'If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes that you are determining.' " (*Cruz*, *supra*, 2 Cal.App.5th at p. 1184.) But, unlike the challenged instruction (which stated evidence Jones committed a charged auto burglary was *not* sufficient to prove guilt as to other charged offenses), the *Cruz* instruction did not state that the propensity evidence by itself was insufficient to prove guilt of a charged crime. And, again, *Cruz* is distinguishable because it deals with a type of evidence (propensity) that is particularly likely to cause confusion and prejudice.

[13] Justice Corrigan and the other dissenting justices concurred in the result on the ground the instructional error was harmless under the circumstances of the case. (*Villatoro*, *supra*, 54 Cal.4th at p. 1182 (conc. & dis. opn. of Corrigan, J.).)

14

Justice Corrigan found the propensity instruction given in *Villatoro* was unnecessary and potentially confusing. (*Villatoro*, *supra*, 54 Cal.4th at p. 1179 (conc. & dis. opn. of Corrigan, J.).) She explained that jury instructions on evidence of *uncharged* crimes admitted either to show propensity under section 1108 or for a nonpropensity purpose under section 1101(b) "are valid and necessary because they explain the *limited purpose* for which evidence of a defendant's other crimes has been admitted. . . . When extensive evidence of a defendant's . . . bad conduct has been presented, the jury needs to hear why this potentially inflammatory, collateral evidence is relevant and how it may properly be considered in deciding whether the defendant committed the charged crimes." (*Id*. at pp. 1179–1180 (conc. & dis. opn. of Corrigan, J.).) But no similar limiting instruction is needed for evidence of *charged* crimes because "[e]vidence pertaining to the charged crimes is not admitted for a limited purpose, and no instruction is needed to tell the jury of its possible relevance. Evidence that the defendant committed the charged crimes is, by definition, relevant and admissible." (*Id.* at p. 1180 (conc. & dis. opn. of Corrigan, J.).)

Justice Corrigan pointed out that the California Supreme Court has never approved the use of an instruction like the one given here, that is, an instruction stating that evidence of a *charged* offense could be used for a nonpropensity purpose (such as finding intent or identity) in determining guilt as to other charged offenses. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1180–1181 (conc. & dis. opn. of Corrigan, J.).) Nor, she noted, has the court held a limiting instruction is required when a defendant is charged with multiple offenses, but one or more of the offenses is not similar enough to the other charged offenses to be admissible under section 1101(b). (*Id*. at p. 1181 (conc. & dis. opn. of Corrigan, J.), citing *People v. Ewoldt, supra*, 7 Cal.4th 380.) Justice Corrigan also suggested that requiring the use of two different standards of proof for evidence of a charged offense would likely confuse jurors. (*Ibid*.)

Justice Corrigan concluded, "Juries have never been instructed about the reasonable inferences they can draw from the relevant facts of the charged crimes. There is no need for them to be so instructed in cases involving multiple charged sex offenses.

15

The instruction is not necessary to explain the relevance of evidence admitted for a limited purpose, because the evidence is *not* limited. . . .  The instruction [in *Villatoro*] risks confusing the jury and, in some circumstances, prejudicing the defendant.  It will set a precedent for a similarly confusing instruction under section 1101(b), and may require clarifying instructions for the defense in cases involving a mixture of sex crimes and other offenses."  (*Villatoro*, *supra*, 54 Cal.4th at pp. 1181–1182 (conc. & dis. opn. of Corrigan, J.).)

Here, the instruction telling the jury it could use evidence of the five auto burglaries for purposes of determining intent and identity as to other charged offenses was unnecessary "to explain the relevance of evidence admitted for a limited purpose, because the evidence [was] *not* limited."  (*Villatoro*, *supra*, 54 Cal.4th at pp. 1181–1182 (conc. & dis. opn. of Corrigan, J.).)  And the instruction was confusing because it required "the jury to apply two standards of proof to evidence of the *same crime*."  (*Id.* at p. 1181 (conc. & dis. opn. of Corrigan, J.).)

Moreover, the instruction given in this case was confusing and imprecise in other ways.  The jury was instructed, "Do not consider this evidence for any other purpose except for the limited purpose of identity or intent."  But it makes no sense to tell the jury its use of evidence that Jones committed five auto burglaries was so limited given that this was the evidence of charged offenses.  As to each charged auto burglary, the jury would have to use the same evidence to find Jones guilty of the underlying offense.

The Attorney General, while not conceding the instruction was erroneous, acknowledges it may have been confusing.  He argues the pertinent inquiry for this confusing instruction is "whether it is reasonably likely the jury interpreted the challenged instruction to authorize a conviction on the charged offenses based only on proof by a preponderance of the evidence" (citing *Estelle v. McGuire* (1991) 502 U.S. 62, 72-73), and suggests we apply the *Chapman* standard to determine whether the instruction was prejudicial.

"Generally, California appellate courts apply either one of two standards for assessing harmless error: (1) the *Chapman* test (harmless beyond a reasonable doubt);

16

and (2) the *Watson* test (a reasonable probability the error was harmless). [Citations.] The more stringent *Chapman* test applies in cases where federal constitutional errors are made; the less stringent *Watson* test applies in other cases." (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1179.) We need not decide which standard applies in this case because any error in giving the challenged instruction was harmless even under the more stringent *Chapman* test.[14]

In this case, the challenged instruction advised the jury that evidence of other charged auto burglaries proven by a preponderance of the evidence "is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Second Degree Burglary and/or Grand Theft of Personal Property. *The People must still prove every charge beyond a reasonable doubt*." (Italics added.)

The trial court also instructed the jury with CALCRIM No. 220 on reasonable doubt, which provided in part, "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise." The court also gave CALCRIM No. 224 on sufficiency of circumstantial evidence and CALCRIM No. 225 on circumstantial evidence of mental state, both of which provided in part, "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have

---

[14] *People v. Nicolas*, *supra*, 8 Cal.App.5th 1165, another case Jones relies on, is inapposite. There, the trial court improperly gave a modified version of CALCRIM No. 375 stating that certain evidence of the defendant's conduct could be considered to show intent, knowledge, and lack of mistake if the jury found the defendant engaged in that conduct by a preponderance of the evidence. (*Id.* at pp. 1177–1178.) That evidence, however, was not actually evidence of "other acts"; rather, it was evidence of an element of the charged crime of vehicular manslaughter with gross negligence. The Attorney General conceded the instructional error, describing the evidence subject to the modified instruction as " 'an indivisible part of the offense itself.' " (*Id.* at p. 1178.) The Court of Appeal concluded the error required reversal per se because the instruction had the effect of lowering the prosecution's burden proof. (*Id.* at pp. 1179, 1181–118.) But there was no similar error in this case.

17

proved each fact essential to that conclusion beyond a reasonable doubt." With CALCRIM No. 515 on eyewitness identification, the jury was further told, "The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty."[15]

And the prosecutor in her closing argument described the use of evidence of the charged auto burglaries in deciding other charges, "Evidence of other offenses: The judge read you an instruction about the October 2013 conviction of auto burglary,[16] and the five offenses total of auto burglary in this case, and he gave you a different standard. If you find that I've proven this case beyond a preponderance of the evidence, that's more likely than not, then you can use the facts in these auto burglaries for this purpose. You can't find him guilty, but you can use those facts for these auto burglaries in discussing the evidence.

"Now, let's say you have Counts 1, 2, 3, 4 and 5, . . . and all five of those are auto burglaries. If you find Mr. Jones guilty beyond a reasonable doubt of Count 1, then that is beyond preponderance of the evidence and you can use that count in your discussions for count 2. [¶] If you find him guilty of Count 2 beyond a reasonable doubt, that is obviously beyond preponderance of the evidence, and you can use Count 1 and Count 2 in your discussions for Count 3. [¶] Now, let's say you get to Count 3 and you say, you know what, there's just not good enough here. [*sic*] . . . *[M]ore likely than not, he did it, . . . but just not beyond a reasonable doubt. I have an articulable reason as to why I think he did not commit Count 3. [¶] So, that's a case . . . where you have the preponderance of the evidence, you don't have reasonable doubt, however—so you find*

---

[15] The jury was also given CALCRIM No. 3515 on multiple counts, which instructed that each count was a separate crime, and "You must consider each count separately and return a separate verdict for each one."

[16] The prosecution had presented evidence of one uncharged auto burglary that occurred in San Mateo County.

18

*him not guilty*; however, you can use Counts 1, 2 and 3 in your discussions for Count 4, and that's how that works.

"The only way you can use . . . these offenses as a—against each other, is for two purposes: For identity that the defendant was the person who committed the offenses alleged in this case, and for intent to steal, that when he acted, when he entered, he intended to steal. Those are the only two ways you can use this—this evidence." (Italics added.) To the extent the challenged instruction may have been confusing to the jury regarding the standard of proof, the prosecutor's argument made clear that the evidence that Jones committed other auto burglaries could not be used in a manner that would lower the standard of proof for a given criminal charge. And the jury did not ask any questions about the challenged instruction during its deliberation.

Moreover, the evidence against Jones for every charge was particularly strong. For each auto burglary charge, Jones was identified by eyewitnesses and/or at least one officer familiar with him. In the Twin Peaks incident, Jones's own text messages corroborated the officer's eyewitness testimony; in every other auto burglary, the vehicle used in the break-in was connected to Jones. The Attorney General argues any ambiguity in the challenged instruction was harmless beyond a reasonable doubt citing the other instructions given on the reasonable doubt standard, the closing arguments of counsel, and the fact that "evidence to support each charge of burglary and grand theft was overwhelming." Yet, in his reply, Jones does not even attempt to show the instruction affected the outcome, relying solely on the theory there was structural error.

On the record before us, it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict had the challenged instruction not been given. (See *People v. Loy* (2011) 52 Cal.4th 46, 69–70 [under *Chapman*, the reviewing court considers "whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error"].)

## DISPOSITION

The judgment is affirmed.

19

                              _____

                              Miller, J.

I concur:

_____

Richman, J.

A149431, *People v. Jones*

People v. Jones A149431

Dissenting opinion of Kline, P.J.

The presumption "that jurors follow the instructions provided by the court in the absence of a showing to the contrary" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 821) is, of course, itself based on the presumption that jurors are "able to understand and correlate [the] instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) That foundational presumption cannot, however, be indulged in this case.

Application of the challenged instruction—which requires jurors to employ different standards of proof to the same evidence for different purposes—may be clearly discernible to trained legal minds but it strains credulity to think its application is apparent to many lay jurors. As will be seen, the instruction is unfortunately amenable to erroneous interpretations which effectively lower the prosecution's burden to prove guilt and thereby deprive defendants of the due process guaranteed by the Fourteenth Amendment. Because the instruction constitutes structural error, it cannot be subjected to harmless error analysis.

I therefore respectfully dissent.

The difficulties presented by the challenged instruction were anticipated by Justice Corrigan in her separate opinion in *People v. Villatoro* (2012) 54 Cal.4th 1152, 1175 et seq. (*Villatoro*). As she noted, although *Villatoro* involved Evidence Code section 1108,[1] which relates to juror evaluation of uncharged sexual misconduct, it is similar in important respects to the instruction advising jurors how to consider other crimes evidence admitted for a noncharacter purpose under subdivision (b) of section 1101 (*Villatoro,* at p. 1179), the statute at issue here. *Villatoro* held that section 1108 allows juries to consider not just uncharged sexual offenses as evidence of guilt, but charged offenses as well. However, this expansion of the use of section 1108 was justified in *Villatoro* because the jury in that case had been effectively instructed that "all offenses must be proven beyond a reasonable doubt." (*Villatoro*, at pp. 1167-1168.) Specifically,

_____

[1] All statutory references are to the Evidence Code.

1

the instruction told jurors that their conclusion that the defendant committed a charged offense "is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt *before* you may consider one charge as proof of another charge." (*Id*. at p. 1167, italics added.)

In her concurring and dissenting opinion, Justice Corrigan argued that "such an instruction contradicts long-standing precedent, expands multiple sections of the Evidence Code in ways not contemplated by the Legislature, and sows the seeds for confusion and unintended consequences." (*Villatoro, supra,* 54 Cal.4th at p. 1169.) Because, however, she believed the error was clearly harmless, she concurred in the result. (*Ibid.*)

As Justice Corrigan pointed out, the confusion was entirely avoidable. "Juries have never been instructed about the reasonable inferences they can draw from the relevant facts of the charged crimes. There is no need for them to be so instructed in cases involving multiple charged sex offenses. The instruction is not necessary to explain the relevance of evidence admitted for a limited purpose, because the evidence is *not* limited. Further, the inference the instruction encourages is not authorized by section 1108. The instruction risks confusing the jury and, in some circumstances, prejudicing the defendant. It will set a precedent for a similarly confusing instruction under section 1101[, subdivision] (b), and may require clarifying instructions for the defense in cases involving a mixture of sex crimes and other offenses." (*Villatoro, supra,* 54 Cal.4th at pp. 1181-1182.)

Concluding that the challenged instruction was "seriously flawed" and "should not be given," Justice Corrigan ended her separate opinion by advising courts and advocates to note that the bare majority in *Villatoro* "was careful to point out the limits of its holding" and "expressly did *not* decide whether an instruction like the one here should be given in future cases." (*Villatoro, supra,* 54 Cal.4th at p. 1182.)

Because it does *not* tell jurors that the prosecution must prove each element of every charge beyond a reasonable doubt *before* a member of the jury may consider one

charge as proof of another charge, and because it tells the jury to use a preponderance of the evidence standard in determining whether the defendant committed charged offenses, the challenged instruction in this case presents even greater concerns than the one that barely survived muster in *Villatoro.*[2]

Four years after *Villatoro* was decided, a panel of the Fifth Appellate District relied on its reasoning in *People v. Cruz* (2016) 2 Cal.App.5th 1178 (*Cruz*) to hold that an instruction explaining the use of currently charged offenses to show propensity under section 1108 must specify that such an offense must be proved beyond a reasonable doubt before it can be used as propensity evidence in support of another charged offense. The *Cruz* court pointed out that the instruction in that case differed from the one given in *Villatoro.* The pattern instruction in *Villatoro* (CALCRIM No. 1191) referred only to the use of uncharged offenses to show propensity, and required them to be proved only by a preponderance of the evidence. Because the modification to the instruction stated that the reasonable doubt standard must instead be applied, " ' "[t]he People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt *before* you may consider one charge as proof of another charge." ' [Citation.]" (*Cruz,* at p. 1185, quoting *Villatoro, supra*, 54 Cal.4th at p. 1167, italics added.)

*Cruz*, *supra*, 2 Cal.App.5th 1178, seems to me on point. In that case, as in this one, the instruction given "told the jury it should first consider whether the offenses charged [in three counts] had been established by a preponderance of the evidence, while holding its ultimate decision on the same offenses is suspension. Then the jury was required to decide whether the preponderance finding showed a propensity, and whether this propensity, in combination with the other evidence, proved those offenses a second time, this time beyond a reasonable doubt." (*Id*. at p. 1186.) The *Cruz* court

---

[2] It is true, as the majority says, that the jury in this case was given several instructions relating to reasonable doubt—specifically, CALCRIM Nos. 220, 224, 225, and 515—but none of the instructions given told jurors they could consider one charge as proof of another only if the juror first concluded that the charge he or she relied upon had been proved beyond a reasonable doubt.

3

acknowledged that *Villatoro* did not "expressly" require that the charged offenses had to be proved beyond a reasonable doubt before they could be used to show a propensity under section 1108, "but it strongly implied that rule," by relying on "an instruction requiring such proof to refute the defendant's argument that there was a risk the jury applied an impermissibly low standard." (*Cruz*, at p. 1186, citing *Villatoro, supra*, 54 Cal.4th at pp. 1167-1168.)

No such instruction was given in *Cruz* or in this case.

As the *Cruz* court observed, "[a] robot or a computer program could be imagined capable of finding charged offenses true by a preponderance of the evidence, and then finding that this meant the defendant had a propensity to commit such offenses, while still saving for later a decision about whether, in light of all the evidence, the same offenses have been proven beyond a reasonable doubt. A very fastidious lawyer or judge might even be able to do that. But it is not reasonable to expect it of lay jurors. We believe that, for practical purposes, the instruction lowered the standard of proof for the determination of guilt. In our view, an instruction explaining the use of currently charged offenses to show propensity under Evidence Code section 1108 must resemble the instruction used in *Villatoro* in specifying that a currently charged offense must be proved beyond a reasonable doubt *before it can be used as propensity evidence in support of another currently charged offense*." (*Cruz, supra*, 2 Cal.App.5th at p. 1186, italics added.)

Although my colleagues conclude the instruction given in this case was erroneous, they maintain that, unlike in *Cruz*, the error here is subject to harmless error analysis. The majority justifies this conclusion on the ground that, unlike this case, "the jury in *Cruz* was instructed that if it found the defendant committed a charged sexual offense by a preponderance of the evidence, the jury could infer he had a disposition to commit sexual offenses, and could use this disposition *'to infer that* [*the defendant*] was likely to commit and *did commit the crime or crimes of which he is accused*.' [Citation.]" (Maj. opn., at p. 12, citing *Cruz, supra*, 2 Cal.App.5th at p. 1184.) In other words, my colleagues say, the jury "could use evidence that the defendant committed a charged sex

4

offense established by a preponderance of the evidence to directly infer that the defendant was guilty of other charged sex offenses" and "[t]he *Cruz* court found the challenged instruction had the practical effect of lowering the standard of proof for the determination of guilt." (*Ibid.*)

The majority claims that the instruction in this case is materially different from that in *Cruz.* "Here, the jury was instructed it could 'consider' the evidence that Jones committed the charged auto burglaries for 'the limited purpose' of determining one element of the charged offenses (intent) and one finding (identity, which is not an element of the offenses [citation])." (Maj. opn., at p. 12.) "Unlike in *Cruz,*" my colleagues say, "the jury was *not* told it could use the evidence of the charged offenses proven by a preponderance of the evidence to infer Jones had a propensity to commit and did commit the charged offenses. To the contrary, the jury was admonished, 'Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.' " (*Ibid.*)

According to the majority "[t]he difference between the *Cruz* instruction and the instruction given in this case reflects the difference between propensity evidence and section 1101[, subdivision] (b) evidence. Recall that propensity evidence is generally prohibited because of the risk such evidence will confuse jurors, unfairly surprise defendants, and cause undue prejudice. [Citation.] The Legislature, however, has decided that statutory exceptions to the general prohibition on propensity evidence are warranted in certain limited cases, including cases involving sexual offenses. But Jones's case does not involve section 1108 or any other statutory exception that would allow the jury to use evidence of charged offenses to find a propensity to commit other similar offenses. Instead, the jury was instructed that it could use the evidence of the charged auto burglaries (if proven by a preponderance of the evidence) only for limited, nonpropensity purposes under section 1101[, subdivision] (b), and the jury was specifically instructed not to conclude that Jones was disposed (i.e., had a propensity) to commit crime. The instruction, therefore, did not present the risk of confusion, unfair

5

surprise, and undue prejudice inherent when a jury is allowed to use evidence of prior conduct to infer propensity." (Maj. opn. at pp. 13-14, fn. omitted.)

As the majority puts it, the jury in this case was told that if it found that appellant had committed the other charged offenses by a preponderance of the evidence it could "consider" that evidence for "the limited purpose of identity or intent." That is, to determine whether appellant "was the person who committed the offenses alleged in this case" and whether appellant "acted with the intent to commit theft in this case." My colleagues think there is a significant difference between the foregoing instruction and that in *Cruz*, which informed jurors that if it found by a preponderance of the evidence that appellant committed the other charged offenses it could "infer" that he had a disposition to commit such offenses and, if it drew that inference, further infer " 'that he was likely to commit and did commit the crime or crimes of which he is accused.' " (*Cruz*, *supra*, 2 Cal.App.5th at p. 1184.)

The majority's reasoning does not stand up to scrutiny. As a practical matter, there is no meaningful distinction between the instruction in this case and that in *Cruz*. A defendant properly found by a jury to be "the person who committed the offenses alleged in [the] case" and to have "acted with the intent to commit" those offenses is in much the same position as a defendant properly found by a jury to have a "disposition" to commit the other charged offenses and on that basis found likely to commit and to have committed the offenses alleged in the case. The findings that the defendant is the person who committed the offense (identity) and that he or she intended that act is no less probative of guilt than a finding of propensity.

In her separate opinion in *Villatoro*, Justice Corrigan expressed concern that the majority's holding would "potentially create confusion and inconsistent results," not only in cases involving instructions under section 1108, but also in cases in which a court instructs the jury that it may use charged offenses to infer, e.g., intent or identity, pursuant to section 1101, subdivision (b). (*Villatoro*, *supra*, 54 Cal.4th at pp. 1180-1181.) Justice Corrigan additionally observed that "[t]he issue becomes even more complicated if the prosecution has also presented evidence of *uncharged* misconduct

6

under section 1101(b) or 1108," as occurred in this case: "CALCRIM Nos. 375 and 1191 explain that the jury need only find that the defendant committed the uncharged acts by a preponderance of the evidence before it can rely on the uncharged acts to support a specific inference. If the same preponderance standard is applied to charged offenses . . . , there is a serious risk of confusion. Requiring the jury to apply two standards of proof to evidence of the *same crime* would inevitably lead to confusion and could potentially erode the presumption of innocence. [Citation.]" (*Villatoro*, at p. 1181.) Finally, Justice Corrigan reasonably believed the instruction given in that case "will set a precedent for a similarly confusing instruction under section 1101(b)." (*Villatoro*, at p. 1182.)

Thus, not only did Justice Corrigan express equal concern regarding the potential ramifications of giving an instruction like the one given in *Villatoro* in cases applying section 1101, subdivision (b) to charged offenses, she also explained that the problem would be exacerbated in cases like this one, in which there is evidence of both uncharged and charged offenses and, therefore, an instruction that requires the jury to apply two standards of proof to the same crime. (*Villatoro*, *supra*, 54 Cal.4th at p. 1181.) Again, the majority's effort to distinguish *Cruz* based on the differences between section 1108 and 1101, subdivision (b) are unconvincing.

Also relevant here is the danger of bootstrapping Justice Corrigan discussed in *Villatoro*: "Whereas the jury is generally free to apply evidence admitted on one count when it is relevant to other charges, courts in this state have long held that the jury may not allow its *verdict* on one count to influence its determination about whether the other counts have been proven. . . . [¶] . . . [¶] . . . . The instruction [at issue] sanctions a bootstrapping of verdicts we have long considered improper. For the jury to apply a verdict against the defendant on one count to conclude the defendant was likely to commit, and *did* commit, the other counts violates the well-settled rule that the jury must decide each count uninfluenced by its verdict on other counts." (*Villatoro*, *supra*, 54 Cal.4th at pp. 1178-1179.)

7

The bootstrapping problem described by Justice Corrigan is greatly aggravated in the present case by the fact that the instruction allowed the jury to use multiple charged counts to help determine appellant's guilt on other counts based only on the preponderance of the evidence standard.

It is not difficult to imagine some of the ways in which a juror may easily misuse the instruction challenged in this case. For example, a juror may reason that a preponderance of the evidence shows that appellant committed each one of the five charged offenses (and also a similar sixth offense that was not charged), and that high number of offenses *collectively* demonstrates that he committed all of his offenses beyond a reasonable doubt. It is true, as the majority says, that "[t]he jury was never told it could use the evidence of charged auto burglaries to infer directly that Jones 'did commit other charged offenses' " (maj. opn., at p. 13, fn. 10), but neither was the jury told it could not. A reasonable juror could read the challenged instruction as requiring only that he or she had to first consider whether, by a preponderance of the evidence, appellant had committed one or more of the charged offenses provided that at some unspecified (or later) time the juror concluded that the People had proved every charge beyond a reasonable doubt. Nothing in the instruction necessarily indicated that reasonable doubt could not be based on the *high number* of charged offenses proved merely by a preponderance of the evidence. Nor, as I have said, did the challenged instruction make clear that the other offense evidence had to be found beyond a reasonable doubt *before* it could be used in support of another charged offense.

In the hypothesized scenario a guilty verdict would not be based on a finding that each of the charged offenses had been proved beyond a reasonable doubt, but instead on a finding that each had been proved merely by a preponderance of the evidence. " 'An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it "vitiates *all* the jury's findings" and its effect on the verdict is "necessarily unquantifiable and indeterminate." ' " (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1179, quoting *People v. Aranda* (2012) 55 Cal.4th 342, 365 (*Aranda*), quoting *Sullivan v. Louisiana* (1993) 508 U.S. 275, 281 (*Sullivan*).)

To paraphrase *Aranda* and *Sullivan*, the effect of lowering the prosecution's burden is the elimination of the possibility of a jury verdict of guilty-beyond-a-reasonable doubt upon which harmless error scrutiny could operate. (*Aranda,* at p. 365; *Sullivan*, at p. 280.)

In sum, the confusing instruction in this case made it likely that at least a single member of the jury would improperly engage in the bootstrapping of verdicts by using verdicts on some counts to conclude appellant committed the offenses charged in other counts. It also made it likely that the jury would use multiple counts, decided by a preponderance of the evidence, to find that appellant committed all of his crimes beyond a reasonable doubt. (See *Villatoro*, *supra*, 54 Cal.4th at pp. 1178-1180.) This instruction, like the one at issue in *Cruz*, "presented the jury with a nearly impossible task of juggling competing standards of proof during different phases of its consideration of the same evidence," the "ultimate effect [of which was] to lower the prosecution's burden of proving guilt beyond a reasonable doubt." (*Cruz*, *supra*, 2 Cal.App.5th at p. 1187.) The error in this case is therefore reversible per se. (*Ibid.*; see also *Sullivan*, *supra*, 508 U.S. at p. 280; *Aranda*, *supra*, 55 Cal.4th at p. 365.)

For the foregoing reasons, I would reverse the judgment.

_____
Kline, P.J.

9

Trial Court:  Superior Court of San Francisco County


Trial Judge:  Hon. Samuel Feng


Attorney for Appellant                   Victor S. Haltom, under appointment by the
Court of Appeal for Defendant and Appellant.


Attorneys for Respondents             Xavier Becerra
Attorney General
Gerald A. Engler
Chief Assistant Attorney General
Jeffrey M. Laurence
Senior Assistant Attorney General
Rene A. Chacon
Supervising Deputy Attorney General
Nanette Winaker
Deputy Attorney General


A149431, *People v. Jones*