Filed 5/8/23 P. v. Scott CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C095465 |
| Plaintiff and Respondent, | (Super. Ct. No. 20F5303) |
| v. | |
| WILLIAM JOE SCOTT, | |
| Defendant and Appellant. | |

A jury found defendant William Joe Scott guilty of one count of aggravated sexual assault of a child under 14 years old by sexual penetration (Pen. Code, §§ 269, subd. (a)(5), 289, subd. (a); count 1),[1] one count of aggravated sexual assault of a child under 14 years old by oral copulation (§ 269, subd. (a)(4); count 2), three counts of oral copulation or sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b);

---

[1] Undesignated statutory references are to the Penal Code.

1

counts 3, 4, & 5), two counts of lewd or lascivious acts with a child under 14 years old (§ 288, subd. (a); counts 6 & 7), one count of preventing or dissuading a victim from reporting a crime (§ 136.1, subd. (b)(1); count 8), and one count of providing lewd material to a minor (§ 288.2, subd. (a); count 9). The trial court sentenced defendant to a determinate term of 10 years eight months, plus an indeterminate term of 60 years to life.

On appeal, defendant contends the trial court (1) erroneously instructed the jury with CALCRIM No. 1191A (Evidence of Uncharged Sex Offense) in combination with CALCRIM No. 3051 (Unanimity: When Generic Testimony of Offense Presented) and (2) violated defendant's right to due process by giving CALCRIM No. 1191A where the evidence of both charged and uncharged offenses consisted entirely of the victim's testimony. Finding no reversible error, we affirm.

## BACKGROUND

### A. *The Prosecution's Case*

The victim, E., who was 14 years old at the time of trial, is defendant's granddaughter.

When E. was in a lower grade in elementary school—closer to kindergarten than to fifth grade—she was sitting on defendant's lap in a dark green GMC truck. Defendant tried to put his fingers in her vagina. E. could feel his fingernails. She told him it hurt and to stop. Defendant did not stop. Defendant also pulled out his penis and told E. to touch it. E. refused. E. could see defendant's penis was "hard."

When E. was in second grade, she told a friend what defendant was doing to her. E. believed her friend told E.'s mother, C.S., because C.S. and E. had a conversation about it.[2] C.S. asked if defendant had touched her, and E. pointed to her vagina. During

---

[2] We refer to E. and C.S., as well as other witnesses, by initials, pursuant to California Rules of Court, rule 8.90, with no informality or disrespect intended.

her trial testimony, however, C.S. denied having a conversation with E. about defendant sexually abusing her.

When E. was still in elementary school but closer to fifth grade, E. spent time with defendant in his Ford truck with a line on it. The truck was parked in a "dirt area" by a creek near where E.'s family lived when they were homeless. E. was lying down on the passenger seat and the middle part between the seats. Defendant pulled E.'s shorts down and put his tongue on her vagina. Defendant was standing outside the truck with his hands on her upper thighs and his tongue moving on her vagina. Defendant stopped when E. told him her siblings were coming back. This happened more than once when they were in that area.

That same day, when E.'s siblings returned, defendant and E. went to find a place that a friend of defendant's had dug out. It was a large hole with a blue tarp over it. They walked down into the hole where there was a chair. Defendant sat in the chair and put E. with her legs on his shoulders facing him. Her shorts and underwear were off. Defendant put his tongue on E.'s vagina. E. saw defendant "jerking off." Defendant made E. "pinky promise" not to tell anyone or he would be sent to jail. Defendant would have E. pinky promise "all the time."

Defendant said he touched E. to teach her, for her to learn. Toward the end, defendant gave E. $20 once or twice if she "did good" and would let him touch her. Defendant also showed E. video clips on his phone of men touching their daughters and granddaughters.

Another time in the Ford truck, defendant put his mouth on E.'s vagina when they went to an AM/PM by a junkyard to buy food for everyone. E. was lying on the driver's seat across the middle console with her clothes off and defendant was standing outside the truck. E. testified that defendant put his mouth on her vagina "[p]robably around 20" times. E. did not remember the specific dates and times of other times when defendant put his mouth on her vagina.

3

Defendant also touched E.'s breast five times, but she could not remember specific dates and times. Another night, E. acted like she was asleep in the back of defendant's truck and defendant grabbed her buttocks.

In May 2020, E. told her foster sister, M., about defendant touching her. M. testified that E. told her that defendant touched her vagina with his mouth. E. said defendant tried to have sex with her and "it hurt." E. also said that defendant touched her vagina with his fingers and it was really uncomfortable because his hands hurt. E. said this happened one time by a creek, a few times by a gas station, and at places all around Redding. Defendant would try to get E. to give him oral sex and masturbate him. E. was very nervous, stuttering and crying when she told M. about these things.

During a forensic interview in July 2020, a police officer showed E. a photograph of defendant. Prior to seeing the photograph, E. was uncomfortable during the interview but very matter of fact. When shown the photograph, E. became visibly upset and immediately started crying.

B.  *The Defense Case*

In the July 2020 forensic interview, E. described only three incidents total where defendant put his mouth on her vagina: two times in a truck and once in the dugout. She also said defendant put his finger in her vagina each time. In the dugout, E. did not say anything about seeing defendant's penis or defendant masturbating. E. also said that defendant would give her money each time he touched her inappropriately. In another interview with a police officer, E. said that defendant would give her between $40 and $50 if she would allow him to orally copulate her.

A.F. testified that she had known defendant for 11 years and E. since she was born. From 2012 to 2019, defendant lived in a camp by a creek. A.F. saw E. and her siblings there with defendant but never saw him send them down to the creek. At trial, A.F. described E. as "a normal kid," "[r]eal smart," "a good big sister, a good little

4

sister," and "a polite kid." However, A.F. previously told an investigator that E. was "a bully, a liar, and very manipulative if she wanted to."

M.T. testified she had known E. since she was eight years old. M.T. described E. as "[m]anipulative." If E. was in trouble, she would bring up something about her parents and demand money. E.'s parents would bribe E. with money and that felt manipulative.

DISCUSSION

I

*CALCRIM No. 1191A in Combination with CALCRIM No. 3501*

Defendant contends that by instructing the jury with CALCRIM No. 1191A in combination with CALCRIM No. 3501, the trial court effectively lowered the prosecution's burden of proof to preponderance of the evidence. Defendant argues that CALCRIM No. 3501 converted uncharged offenses into charged offenses by allowing the jury to convict defendant based on uncharged acts. Thus, defendant argues that the jury convicted him of the charged crimes based on mere preponderance of the evidence, the standard of proof CALCRIM No. 1191A instructed the jury could be used to infer from uncharged crimes that he had a propensity to commit the charged crimes. Defendant asserts "there really were no uncharged offenses in this case" because the jury could render a unanimous verdict under CALCRIM No. 3501 based on the 20 times that E. testified defendant orally copulated her or the five times she testified he touched her breast.

We reject this claim because the jury was clearly and consistently instructed that the prosecution had the burden of proving each charged crime beyond a reasonable doubt, and CALCRIM No. 1191A just as clearly told the jury uncharged offenses proved by a preponderance of the evidence could only be considered for propensity. CALCRIM No. 3501 is a unanimity instruction required, where, as here, a victim offers "generic" testimony of sexual abuse that does not identify the time and place of acts that occurred

5

within a given time period.  (See *People v. Avina* (1989) 211 Cal.App.3d 48, 53.)  However, the prosecution clearly tied the oral copulation charges to specific acts testified to by E., not generic testimony, and the incidents where defendant touched E.'s breast were not included in CALCRIM No. 3501.

A.    *Additional Background*

In discussing potential jury instructions with counsel, the trial court asked if counsel had reviewed CALCRIM No. 1191A.  When counsel answered in the affirmative, the court said, "that will be given."  The trial court then said, "But under our particulars of our case, 3501 will be given, and we've specifically identified Counts 4 and 5," as well as count 8 to be included in the instruction.  The court asked for "any comments about 3501," and defense counsel answered, "Submit."

The trial court instructed the jury with CALCRIM No. 1191A as follows:

"The People presented evidence that the Defendant committed the crimes of oral copulation of a child 10 years and under and lewd and lascivious acts of a child under 14 years of age that were not charged in this case.  These crimes are defined for you in these instructions.  You may consider this evidence only if the People have proved by preponderance of the evidence that the Defendant, in fact, committed the uncharged offenses.

"Proof by a preponderance of the evidence is a different burden of proof from beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the Defendant committed the uncharged offenses, you may, but are not required to, conclude that from that evidence that the Defendant was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the Defendant was likely to commit and did commit aggravated sexual assault with a child by sexual penetration by force, . . . aggravated sexual assault of a child by forcible oral

6

copulation, oral copulation or digital penetration with a child 10 years and under, lewd or lascivious acts with a child under the age of 14 years, and exhibiting harmful material to a minor, all as charged in this case.

"If you conclude that the Defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It's not sufficient by itself to prove that the Defendant is guilty of aggravated sexual assault of a child by sexual penetration by force, aggravated sexual assault of a child by forcible oral copulation, oral copulation or digital penetration of a child 10 years and under, . . . lewd or lascivious acts with a child under 14 years of age, and exhibiting harmful material to a minor. The People must still prove each charge beyond a reasonable doubt. Do not consider this evidence for any other purpose."

After instructing the jury with CALCRIM No. 1191B (Evidence of Charged Sex Offense), the trial court instructed the jury with CALCRIM No. 3501:

"And the Defendant is charged with oral copulation with a child 10 years and under in Counts 4 and 5 some time during the period of May 24, 2012, to May 24, 2017.

"The Defendant is charged with preventing, dissuading a witness, victim from reporting a crime in Count 8 during a period between May 24, 2012, to May 24, 2018. The People here presented evidence of more than one act to prove that the Defendant committed these offenses.

"You must not find the Defendant guilty unless: One, you all agree that the People have proved that the Defendant committed at least one of these acts, and you all agree on which act he committed for each offense; or, two, you all agree that the People have proved that the Defendant committed all the acts alleged to have occurred during this time period and have proved that the Defendant committed at least the number of offenses charged."

In closing, the prosecutor argued:

"Counts 4 and 5 are referring to the other two times that the Defendant pu[t] his mouth on [E.'s] vagina. She was under 10 years old in those two times. She testified they happened closer to her being in fifth grade but not in fifth grade. And while it was really unclear from [C.S.] how old her child was when she was in fifth grade, we know, based on the fact that she was in kindergarten at approximately five, she will be nine or 10. And she does not have to be under 10, she has to be 10 years or under. So that's what Counts 4 and 5 refer to.

"The first time in the truck where she's laying down and the Defendant is sitting next to her and bends down and puts his mouth on her vagina, and the other time where he's standing outside of the truck and putting his mouth on her vagina. So . . . we have three oral copulations charged; one is the forcible, and the other two are Counts 4 and 5."[3]

The prosecutor continued: "You heard something called a unanimity instruction. What that instruction basically means is that there are three -- well, let's go for Counts 4 and 5 are oral copulations that are charged. [E.] testified pretty specifically about what those are."

After explaining that the unanimity instruction also applied to count 8, the dissuading a witness charge, because E. testified defendant told her to "pinky promise" not to tell "multiple times," the prosecutor said:

"The way the unanimity instruction works is that you either all have to agree on one time that it happened because it's only one count, or you can all agree that it happened a bunch of times, and then he would be guilty of one count. And that's explained to you in the instruction.

---

[3] The forcible oral copulation charged in count 2 involved defendant picking E. up and placing her on his shoulders, and putting his mouth on her vagina.

8

"Similarly, you could apply it to Counts 4 and 5 because [E.] testified that the Defendant put his mouth on her vagina certainly more than three times. She testified that it happened closer to over 10, 15, 20 times. So she was very specific in the two times, but she did testify that it happened -- well, the two times without force. I'm sorry. There were three total times. She did testify that it happened many, many more times than that. So if you all agree that it happened more than three times, then you can find him guilty of the two times that it was charged."

Turning to CALCRIM Nos. 1191A and 1191B, the prosecutor said:

"You heard instructions about using evidence of charged sexual acts and uncharged sexual acts against one another, I guess, is how I'll put it. When we're talking about the charged sexual acts, that is sort of what I was referring to earlier. If you find I have proven one of them, you can use that to determine whether or not the other counts happened. The only count you can't use it for is Count 8, and that is the pinky promises not to tell.

"The evidence of uncharged sexual acts is slightly different. The uncharged acts are the 10, at least, other times that [E.] said the Defendant put his mouth on her vagina. So you can use the fact that [E.] testified it happened many more times to determine that it happened the times that are charged.

"And, remember, most important thing, is I still need to prove every element to you beyond a reasonable doubt."

B.    *Analysis*

Defendant did not object to the trial court instructing the jury with either CALCRIM No. 1191A or CALCRIM No. 3501, nor does defendant contend that these instructions are incorrect statements of the law. Therefore, defendant has forfeited his claim of instructional error by failing to raise it in the trial court. (*People v. Bolin* (1998) 18 Cal.4th 297, 326; *People v. Phea* (2018) 29 Cal.App.5th 583, 608 (*Phea*).) Defendant contends, however, that an objection is unnecessary under section 1259 if the error

9

affects a defendant's substantial rights. Determining whether instructional error affects a defendant's substantial constitutional rights requires examination of the merits of the claim. (*Phea*, at p. 608.) Therefore, we consider defendant's contentions on the merits and reject them.[4]

To begin with, defendant's contention that CALCRIM No. 1191A allowed the jury to find him guilty based on uncharged crimes proved by a preponderance of evidence does not apply to count 7 (defendant's touching E.'s breast), as defendant contends. CALCRIM No. 3501 only referred to counts 4 and 5 (oral copulation) and count 8 (dissuading a witness) as subject to the instruction. Even if we accept defendant's proposition—which we do not—that CALCRIM No. 3501 converted uncharged offenses into charged offenses for purposes of CALCRIM No. 1191A, defendant does not provide a basis to reverse count 7 for lewd or lascivious acts (§ 288, subd. (a)) in light of E.'s testimony that defendant touched her breast five times. Rather, on count 7, the trial court gave CALCRIM No. 3502, which instructed the jury: "[Y]ou must not find the Defendant guilty of lewd and lascivious acts with a child under 14 years of age in Count 7 unless you all agree that the People have proved specifically that the Defendant committed that offense based upon testimony that the Defendant touched the breast of [E.] beyond a reasonable doubt." Thus, the prosecutor had to elect a single incident where defendant touched E.'s breast and prove it beyond a reasonable doubt. Accordingly, defendant's argument only embraces counts 4 and 5 for oral copulation.

---

[4] Defendant also contends he need not object to an instructional error that violated his substantial constitutional rights. The constitutional right defendant refers to is an instruction that lowers the burden of proof inconsistent with the presumption of innocence. This argument does not invoke facts or legal standards different from defendant's claim under section 1259. Therefore, rejection on the merits of the state law claim necessarily leads to rejection of this constitutional "gloss," and no separate constitutional discussion is required. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 990, fn. 5.)

Even limited to counts 4 and 5, defendant's argument fails for multiple reasons. First, we conclude a reasonable jury would convict defendant of counts 4 and 5 under the prong of CALCRIM No. 3501 that a unanimous guilty verdict may be based on all jurors agreeing on which acts defendant committed. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 555-556 [CALCRIM No. 3501 is a unanimity instruction that allows the jury to unanimously agree that the defendant committed specific acts but also allows conviction if the jury unanimously agrees the defendant committed all the acts described by the victim].) Notwithstanding E.'s testimony that defendant orally copulated her multiple times, the prosecutor tied counts 4 and 5 to specific incidents, i.e., the incidents in defendant's truck that E. described in detail. Even when explaining CALCRIM No. 3501, the prosecutor argued that E. "testified pretty specifically" about the oral copulations charged in counts 4 and 5 and "was very specific in the two times." Thus, E.'s testimony about the oral copulations charged in counts 4 and 5 was not truly generic. E.'s brief reference to oral copulation occurring "[p]robably 20 times" may have been sufficient to require CALCRIM No. 3501, but her testimony recounted the specifics of the two incidents of oral copulation in defendant's Ford truck. Thus, the jury had detailed testimony of two acts based on which it could unanimously agree to convict defendant on counts 4 and 5, but little to no evidence on which to convict defendant based on any other incidents.

Second, even assuming that the jury based its unanimous verdict on counts 4 and 5 on the second prong of CALCRIM No. 3501, i.e., the conclusion that all 20 acts of oral copulation E. testified to occurred, defendant's argument assumes the jury used generic evidence of the acts in this group to infer propensity under CALCRIM No. 1191A and also to prove that defendant committed the crimes alleged in counts 4 and 5. The problem with this argument is that CALCRIM No. 1191A instructed the jury that it could only convict defendant of counts 4 and 5 based on proof beyond a reasonable doubt. CALCRIM No. 1191A told the jury that "[i]f you conclude that the Defendant committed

11

the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence," and is "not sufficient by itself to prove that the Defendant is guilty" of the charged offenses, including oral copulation of a child 10 years and under. "The People must still *prove each charge beyond a reasonable doubt*." (Italics added.) Thus, "the jurors [were] effectively admonished that, even if they find defendant committed the uncharged sexual misconduct, the reasonable doubt standard 'still' applies to the charged offenses." (*Phea*, *supra*, 29 Cal.App.5th at p. 614, fn. omitted.)

In *People v. Reliford* (2003) 29 Cal.4th 1007, the California Supreme Court rejected a similar claim. The defendant in that case argued that instructing the jury with CALJIC No. 2.50.01, the predecessor to former CALCRIM No. 1191, was " 'likely to mislead the jury concerning . . . the prosecution's burden of proof.' " (*Reliford*, at p. 1012.) Focusing on the plain language of the instruction, the court in *Reliford* concluded: "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination" whether the defendant committed an uncharged sex crime. (*Id.* at p. 1016; *Phea*, *supra*, 29 Cal.App.5th at p. 614 ["it is not reasonably likely a jury would conclude that the lower standard of proof applicable to the uncharged offenses would apply to the proof of the charged offenses"].)

While acknowledging that "[i]t is technically true, of course, that CALCRIM No. 1191A told the jury to apply the preponderance standard" to crimes " '*that were not charged in this case*,' " defendant asserts that "there really were no uncharged offenses in this case." Defendant relies on *People v. Nicolas* (2017) 8 Cal.App.5th 1165, to support his argument but the case is clearly distinguishable.

In that case, the defendant was texting on her phone while driving on the freeway. (*People v. Nicolas, supra*, 8 Cal.App.5th at p. 1170.) She crashed into the victim's car stalled in a traffic jam and killed the victim. (*Id.* at pp. 1169-1170.) The defendant was

12

convicted of vehicular manslaughter with gross negligence. (*Id.* at p. 1170.) The trial court instructed jurors they could use uncharged behavior of cell phone use under Evidence Code section 1101, subdivision (b), to show intent and knowledge and to determine that defendant's actions were not due to mistake or accident, if the jury found the People had proved the uncharged acts by a preponderance of evidence. (*Nicolas*, at pp. 1177-1178.) The appellate court found the error reversible per se because there were no uncharged acts admitted in evidence. (*Id.* at p. 1178.) "The instruction told the jury that the evidence concerning defendant's phone use immediately prior to the collision could be proven under a preponderance of the evidence standard. This had the effect of lowering the prosecution's burden of proof because this was *the same evidence* that the prosecution was using to prove gross negligence. Even though the jury was also told (through other jury instructions and argument) that it needed to find gross negligence (and ultimately defendant's guilt) under a reasonable doubt standard, the two competing standards of proof were addressing *the same evidence*." (*Id.* at pp. 1181-1182.)

Here, the uncharged acts were not, as defendant suggests, part of the same course of conduct as the charged acts or an indivisible part of those offenses, as in *Nicolas*. A violation of section 288.7, subdivision (b), charged in counts 4 and 5, is not a continuous course of conduct offense. (See *People v. Anderson* (2012) 208 Cal.App.4th 851, 891; see also *People v. Jones* (1990) 51 Cal.3d 294, 314.) The prosecutor explained that uncharged sexual acts were not the specific incidents that E. specifically testified occurred in defendant's trucks, but the "10, at least, *other* times that [E.] said the Defendant put his mouth on her vagina." (Italics added.) Thus, the uncharged offenses were not part of the charged offenses in the same way they were in *Nicolas*.

The decisions in *People v. Villatoro* (2012) 54 Cal.4th 1152 and *People v. Cruz* (2016) 2 Cal.App.5th 1178, cited by defendant, also do not support his claims. *Villatoro* held that a modified version of CALCRIM No. 1191 that *charged* offenses must be proven beyond a reasonable doubt even if those offenses are used to infer propensity did

13

not create a "risk the the jury would apply an impermissibly low standard of proof." (*Villatoro*, at pp. 1167-1168.) *Cruz* held that CALJIC No. 2.50.01, which did not distinguish between charged and uncharged sex offenses, was incorrect in stating that a charged offense found true only by a preponderance of evidence could be used to show propensity to commit other offenses. (*Cruz,* at pp. 1183-1184.) The court concluded that lay jurors could not reasonably be expected to find charged offenses true by a preponderance of evidence to show propensity and then decide that the same offenses were proven beyond a reasonable doubt. (*Id.* at p. 1186.) The court held the instruction must specify "that a currently charged offense must be proved beyond a reasonable doubt before it can be used as propensity evidence in support of another currently charged offense." (*Ibid.*) Following *Villatoro* and *Cruz*, CALCRIM No. 1191 was divided into CALCRIM No. 1191A for uncharged offenses and CALCRIM No. 1191B for charged offenses, the instructions given here, to expressly incorporate the differing standards of proof. (See *People v. Gonzales* (2017) 16 Cal.App.5th 494, 496, fn. 1; *People v. Jones* (2018) 28 Cal.App.5th 316, 327, fn. 8.)

Despite this jurisprudence carefully differentiating the burden of proof in a propensity instruction given for uncharged offenses versus charged offenses, defendant in effect asserts that whenever there is generic testimony requiring the trial court to instruct the jury with CALCRIM No. 3501, there are no uncharged offenses and therefore only CALCRIM No. 1191B may be given on propensity. Defendant cites no authority for this proposition, and we are not aware of any.

We conclude that defendant's contentions lack merit. (*Phea*, *supra*, 29 Cal.App.5th at p. 614.) As stated, we consider the merits of defendant's claim only to determine whether defendant forfeited his challenge to the trial court's instructing the jury with CALCRIM No. 1191A. Therefore, defendant would now forfeit this claim, except that he raises another challenge to CALCRIM No. 1191A, which we address *post*.

14

## II

### *CALCRIM No. 1191A Where the Victim's Testimony Is the Sole Evidence of Uncharged and Charged Crimes*

Defendant contends that CALCRIM No. 1191A violated his right to due process, because the jury could not distinguish between the burden of proof by a preponderance of the evidence for uncharged offenses and proof beyond a reasonable doubt for charged offenses, given that the evidence in both cases consisted of solely E.'s testimony. We disagree.

In *People v. Gonzales*, *supra*, 16 Cal.App.5th 494, the prosecution presented evidence of uncharged sex offenses the defendant committed through the victim's own testimony. (*Id.* at p. 496.) The defendant contended, inter alia, that CALCRIM No. 1191 "likely resulted in the jury misapplying the burden of proof for the charged offenses," based on "that portion of CALCRIM No. 1191 that instructs the jury may consider the uncharged offenses if the People have proved them by a preponderance of the evidence." (*Gonzales*, at p. 502.) The court pointed out, as we have, that "CALCRIM No. 1191 also instructs that the uncharged offenses are only one factor to consider; that they are not sufficient to prove by themselves that the defendant is guilty of the charged offenses; and that the People must still prove the charged offenses beyond a reasonable doubt." (*Id.* at p. 502, citing *People v. Reliford*, *supra*, 29 Cal.4th at pp. 1011-1016 as rejecting a similar challenge.)

So, too, in this case, CALCRIM No. 1191A told the jurors that the People must prove each charge beyond a reasonable doubt. Further, the jury was instructed with CALCRIM No. 220 (Reasonable Doubt), and, in closing argument, the prosecutor emphasized the People's burden to prove the charges beyond a reasonable doubt.

Accordingly, we conclude this contention is without merit, as well, and defendant therefore has forfeited his claim that the trial court erred in instructing the jury. (*Phea*, *supra*, 29 Cal.App.5th at p. 614.)

15

DISPOSITION

The judgment is affirmed.

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
RENNER, Acting P. J.

_____/s/_____
EARL, J.

16