Filed 1/16/25  P. v. Ellis CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHN SPENCER ELLIS,<br><br>    Defendant and Appellant. | G063278<br><br>(Super. Ct. No. 19HF0028)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Reversed.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kristen Chenelia and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant John Spencer Ellis was convicted of one count of attempted sexual penetration of a person under the age of 18 and sentenced to one year in prison. (Pen. Code, §§ 664, subd. (a), 289, subd. (h).)[1] On appeal, he claims the trial court erred when instructing the jury on the use of uncharged acts as propensity evidence. We agree this instruction was error. Accordingly, we reverse the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

S.E. was born in early 1995. She had one sister, A., who was approximately one year younger. S.E.'s parents divorced when she was five. Ellis married her mother, K.E., when S.E. was starting high school. S.E., her mother, and her sister moved in with Ellis.

S.E. described her relationship with Ellis as "cold." She and her sister did not trust him. The only improvement occurred because of her mother's insistence and pressure. That pressure grew when S.E. was in high school. S.E. was told that Ellis "was helpful financially with a lot of things." She began going to a boxing gym with Ellis as part of the effort to improve their relationship.

When she was in high school, S.E. decided to participate in a fitness competition. Ellis, who was a personal trainer, had a gym set up in the garage. Ellis offered to help S.E. prepare for the competition by training her. At first the sessions were normal and appropriate, and the improved relationship with her stepfather pleased S.E.'s mother. She was 17 years old at the time.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

During one session, however, Ellis moved his hands under S.E.'s sports bra and started to touch her. S.E. "froze." He began messaging her breasts. She did not later remember how long this went on for. She said that she was "frozen completely" and Ellis's conduct was "[c]ompletely unexpected." Eventually, she moved, and he stopped and stood up. Ellis said something to the effect of "'we'll work on it again later this week or next'" and gave her a hug. She ran inside.

After this incident, S.E. was "[t]errified" and felt "shock." She stated she "did not have an answer for what to do at that point because you have to remember, prior to this there was that pressure, 'Make a relationship. Do better.'" She felt like she had walked into a trap. She did not tell anyone because she did not think she would be believed. S.E. thereafter believed that Ellis was training with her alone during a time when he knew K.E. and S.E.'s sister would be out of the house.

During the next incident, which also took place during a workout when the two of them were alone in the house, Ellis put his hand down S.E.'s pants and tried to stimulate her vagina. He inserted at least one of his fingers into her vagina. This lasted at least a few minutes. She froze because she was afraid of his reaction if she resisted. She was "terrified" of his potential response.

The third incident took place in the living room. Ellis again touched S.E.'s breasts and put his hands down her pants and penetrated her vagina. She was silent and frozen. Ellis said to her: "'Different things feel good. There are different things that feel good to different people.'" S.E. was able to get up and walk away, but Ellis stopped her in the hallway, hugging her and kissing her on the cheek. S.E. pushed him away and went upstairs, waiting for her mother to return. None of Ellis's conduct with her was

consensual. She did not tell her mother what had happened because she feared retaliation, had no evidence, and did not think she would be believed.

After that incident, S.E. withdrew from Ellis. She sent him a text message while she was at school, asking, as vaguely as possible, for his conduct to stop: "'I want this to stop. I don't want that to happen again. Can you please stop?'" He sent back a message that said: "'Okay. Thank you for being so cryptic about this.'" S.E. did not retain the text message, but remembered the contents. To her, Ellis's response indicated that "he's well aware of how dark this is and he's well aware of his actual intentions, and in that message, when I read that back, I was sitting in class. I was like, okay, no one is going to believe me. He's confident about his ability to overpower me both physically and probably verbally as well. And at that point I was like, I just need to stay away as much as I possibly can." She already had plans to leave the state for college the following year, and started staying away from the house as much as possible, spending more time with her boyfriend.

As a result of Ellis's abuse, she developed a binge-eating disorder and gained 30 pounds. S.E. described the binge eating as a way for her to reassert control.

After S.E. graduated from high school, she attended college in Texas and moved to Spain following graduation. In 2018, her mother visited her in Spain, and brought up the idea of bringing Ellis to visit. At that point, S.E. told her about the abuse. Her mother urged S.E. to record a call with Ellis discussing the abuse.

During the call, S.E. asked Ellis why he "felt the need to be physical or express yourself sexually with me." Ellis responded: "I don't know what answer I can give you that will be appropriate or justified or accepted or anything. You're a pretty lady, I mean obviously that's one thing." Ellis told

4

S.E. that his conduct had caused him to experience "guilt, shame, every horrible f[—]ing thing you could think of," and that he had considered suicide as a result. Ellis said, "I'm not saying it was appropriate. I'm not saying I'm pleased. I'm f[—]ing disgusted. Forgive me." At the end of the call, Ellis was clear that he wanted no record of it: "Delete, delete, delete, delete. I'm doing the same."

S.E. reported the abuse to law enforcement. When confronted with the call, Ellis's response was "'I didn't have sex with her.'" He claimed he had considered committing suicide.

In 2021, Ellis was charged with sexual penetration of a minor with a foreign object (§ 289, subd. (h), count one), and two counts of misdemeanor sexual battery (§ 243, subd. (e)(1), counts two and three). One count of misdemeanor sexual battery was for touching S.E.'s breasts, the other her vagina. The first two counts were alleged to have occurred between October 1 and October 31, 2012. Count three was alleged to have occurred between October 1, 2012, and February 27, 2013. Prior to trial, on October 2, 2023, the prosecution dismissed counts two and three because the statute of limitations had passed. The case proceeded to trial on count one.

On October 9, 2023, Ellis was found guilty of one count of attempted sexual penetration of a person under the age of 18. (§§ 664, subd. (a), 289, subd. (h).) This was a lesser included offense of count one, sexual penetration of a minor with a foreign object. (§ 289, subd. (h).) Ellis was sentenced to one year in prison. This appeal followed.

DISCUSSION

I.

CALCRIM No. 1191A

A. *Standard of Review*

"'We review a claim of instructional error de novo. [Citation.] "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.'" [Citation.] 'Generally, the trial court is required to instruct the jury on the general principles of law that are closely and openly connected with the evidence and that are necessary to the jury's understanding of the case. [Citation.] It also has a duty to refrain from giving incorrect instructions or instructions on principles of law that are irrelevant and that would have the effect of confusing the jury or relieving it from making findings on the relevant issues.'" (*People v. Morales* (2021) 69 Cal.App.5th 978, 990.)

B. *Relevant Instructions*

The jury was instructed: "The People presented evidence that the defendant committed the crimes of sexual battery that were not charged in this case. This crime is defined for you in these instructions. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense.

"Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude it is more likely than not that the fact is true. If the People have not met this burden of proof, you must disregard this evidence entirely.

6

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit and did commit sexual penetration by foreign object of a minor, as charged here.

"If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of sexual penetration by foreign object of a minor. The People must still prove each charge and allegation beyond a reasonable doubt."

The jury was also given a unanimity instruction: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

*C. Procedural Context*

After the prosecution dismissed counts two and three, defense counsel asked the court not to allow any of the evidence pertaining to those counts pursuant to Evidence Code section 1108. Counsel argued that allowing such evidence would create substantial danger of undue prejudice under Evidence Code section 352.

The court ruled: "Okay. All right. I have looked at it, and I don't think they are made inadmissible under 352. Even if I just look at them as the victim testifying about her relationship with the Defendant, I think they would be relevant as to what went on during the time period that she alleges the conduct alleged in Count 1. I think it does tie in." The court further stated

7

that the evidence would not be unfairly prejudicial, and any confusing testimony could be addressed in cross-examination.

### D. Relevant Law

Under Evidence Code section 1101, subdivision (a), an uncharged offense cannot be admitted if the only theory of relevance is that the defendant had a propensity to commit the charged crime. In short, uncharged crimes cannot be used as circumstantial evidence that the defendant committed the charged offense. (*People v. Clark* (2016) 63 Cal.4th 522, 588.)

Evidence Code section 1108, subdivision (a), sets forth an exception. "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." An uncharged offense need only be proved by a preponderance of the evidence.

### E. Failure to Object

Ellis did not object to the instruction. Ellis argues that any instruction, when given, must be correct, and the incorrect instruction impacted his substantial rights. If the instruction was incorrect, it would impact his substantial rights. Accordingly, we consider whether the instruction was correct.

### F. The Instruction was Erroneous

Ellis contends the jury instructions did not specify which offenses were charged and uncharged, allowing the jury to convict based upon either alleged incident of penetration and to use propensity evidence under the

8

lesser preponderance standard. This, he contends, had the effect of lowering the burden of proof. When reviewing jury instructions, we read the instructions as a whole to determine whether there is a reasonable likelihood the jury applied the challenged instruction in an impermissible manner. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

Evidence of three separate instances of sexual offenses were presented to the jury. In the first, Ellis touched S.E.'s breasts. In the second, he touched her vagina and tried to stimulate her, inserting at least one finger into her vagina. In the last incident, Ellis touched S.E.'s breasts and inserted one or more fingers into her vagina.

At trial, the only charged offense was a single count of sexual penetration by a foreign object of a minor. The jury was instructed the uncharged offenses were "sexual battery." The instruction did not state which specific acts constituted sexual battery.

Ellis contends that "[t]he jury was specifically told that it could rely on the evidence of uncharged *crimes* (plural) as propensity evidence in this case [citation], but there was no distinction here as to which of the alleged incidents of sexual penetration appellant was being charged with." He argues that the battery instruction included the penetration incidents and claims the jury instruction here violated the rule set forth in *People v. Cruz* (2016) 2 Cal.App.5th 1178 (*Cruz*).

In *Cruz,* the jury was instructed: "'In determining whether defendant has been proved guilty of any sexual crime of which he is charged, you should consider all relevant evidence, including whether the defendant committed *any other sexual crimes, whether charged or uncharged . . . .*'" (*Cruz*, *supra*, 2 Cal.App.5th at pp. 1183–1184, italics added.) The instruction continued: "'*If you find, by a preponderance of the evidence, that the defendant*

9

*committed any such other sexual offense* you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. [¶] If you find that the defendant had this disposition you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.'" (*Id.* at p. 1184.)

The court held the instructions "presented the jury with a nearly impossible task of juggling competing standards of proof during different phases of its consideration of the same evidence" because: "In effect, the instruction given here told the jury it should first consider whether the offenses charged in counts 1, 2, and 3 had been established by a preponderance of the evidence, while holding its ultimate decision on the same offenses in suspension. Then the jury was required to decide whether the preponderance finding showed a propensity, and whether this propensity, in combination with the other evidence, proved those offenses a second time, this time beyond a reasonable doubt." (*Cruz, supra,* 2 Cal.App.5th. at pp. 1185–1186, 1187.)

The instruction in this case was similarly flawed. The charged crime was sexual penetration. The jury was instructed that the uncharged crimes they could consider as propensity evidence were "sexual battery." The prosecutor, during closing argument, stated: "We heard about three different incidents, and the judge read you instructions about 1191[A], which is the evidence of uncharged sex offenses, and those are those three incidents. He's obviously charged with one." The prosecutor continued: "So you got to hear the conduct kind of leading up to the vagina with a rubbing of the breasts and everything else just to kind of give you an understanding of the entire dynamic." The Attorney General contends these comments differentiated the charged penetration from the uncharged batteries.

10

In addition to the CALCRIM No. 1191A instruction, the jury was instructed on sexual battery. This crime, they were told, required touching an intimate part of S.E. against her will, among other elements. (CALCRIM No. 935.) It was easy to conflate this offense with the penetration offense, which also required a type of touching. To make matters more confusing, the jury was also instructed on assault (CALCRIM No. 915) and simple battery (CALCRIM No. 960). Without instructing the jury on the specific acts they were to consider as propensity evidence, and without excluding the uncharged incident of penetration from the ambit of sexual battery, this instruction was simply asking the jury to do too much in the way of mental gymnastics regarding the two burdens of proof. (*Cruz*, *supra*, 2 Cal.App.5th. at pp. 1185–1186, 1187.) The potential for confusion and conflation was made more likely by asking the jury to consider both charged and uncharged acts that took place during the same incident.

Given the potential for confusion, it is reasonably likely that the jury applied the instructions in a manner that violated Ellis's constitutional rights by reducing the burden of proof on the "charged" offense. (See *People v. Covarrubias* (2016) 1 Cal.5th 838, 909.) Accordingly, we conclude this instruction was erroneous. Because the instruction had the effect of reducing the burden of proof, the error is reversible without a showing of prejudice. (*People v. Aranda* (2012) 55 Cal.4th 342, 365.)

## II.

## CALCRIM NO. 350

Ellis also argues the court erred in the language it used to instruct with jury with CALCRIM No. 350. Because we must reverse the

conviction for the previous instructional error, we need not consider this argument or Ellis's argument regarding ineffective assistance of counsel.

## DISPOSITION

The judgment is reversed.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.