Filed 1/24/25  P. v. Hernandez CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JOSE FELICIANO HERNANDEZ,<br><br>     Defendant and Appellant. | D084306<br><br><br>(Super. Ct. No. FWV21000386) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Corey G. Lee, Judge.  Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Jose Feliciano Hernandez of one count of raping his 13-year-old niece, Jane Doe, and two counts of committing a forcible lewd act

on her person.  The jury was unable to reach a verdict on an additional count of forcible oral copulation.  It is undisputed that all of the offenses occurred on a single occasion.

Hernandez contends his convictions for the two counts of forcible lewd acts must be reversed because the trial court erroneously instructed the jury with CALCRIM No. 1191B on the permissible use of propensity evidence in sex crime cases.  The standard instruction was given by the trial court without any material change.  It told the jury that, if they found Hernandez committed any one of the charged offenses beyond a reasonable doubt, they were permitted, but not required, to infer he was generally inclined to commit sex offenses, and to then further consider this fact when assessing whether he committed any of the other offenses.

Hernandez contends CALCRIM No. 1191B provides a correct statement of the law under most circumstances, but it is incorrect when given in a case in which all of the charged offenses occur on the same occasion.  He contends the instruction may only be given when a defendant has been charged with sexual offenses committed on separate occasions.  We disagree.  Hernandez's contention is based on a faulty premise and lacks merit in the face of settled holdings by the California Supreme Court.  We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Prosecution Case*

When she was 13 years old, Jane lived in a two-bedroom apartment with her mother, father, brother, grandmother, and Hernandez.  Hernandez was her uncle, and her grandmother's son.  Jane's mother and father slept in one of the bedrooms.  Jane, her brother, and her grandmother slept in a second bedroom in three separate beds.  Hernandez slept in the dining room

2

behind a curtain that partitioned it from the rest of the main living area into a makeshift bedroom.

One afternoon, in November 2020, Jane fell asleep in her room while everyone in the family except Hernandez was out shopping. Jane awoke to a burning sensation in her vagina. She was lying on her back and Hernandez was on top of her. His penis was inside of her vagina. His hands were squeezing her arms above her head, "smashing" them.

Jane felt frozen and she could not move. She tried to yell and scream, but her mind went blank and she could not make a sound. Hernandez moved his penis back and forth inside her for five or 10 minutes.

Hernandez squeezed both of Jane's breasts while his penis was inside her vagina. He licked her nipples and she thought to herself, "This is so disgusting." After he removed his penis, he licked her vagina. Jane was still unable to move.

When Hernandez finally stood up, Jane was able to run to her bedroom door. The door had been locked, so she unlocked it. She ran to a bathroom in the hallway and locked the door behind her. Hernandez followed her. He knocked on the door and told her to not say anything about what had happened. His tone of voice was serious and he seemed mad. She was afraid. She urinated and saw some blood on the toilet paper. She also saw mucous "[l]ike when you have a cough and you cough something."

Jane stayed in the bathroom for about 10 minutes until she heard what she thought was her parents returning from the store. She opened the bathroom door just enough "to peep out [her] head," and she saw her mother, father, grandmother, and brother back in the apartment. She said "hi" to them and did not tell them what happened. At the time, she did not think they would believe a relative did this to her.

3

One or two weeks later, Hernandez told Jane again to not say anything about what had happened. He again used a "serious strong tone of voice" and she "felt like [her] heart almost stopped beating [out] of fear."

Jane disclosed the rape to her grandmother on January 24, 2021, about two months after it took place. She did this the night before a scheduled doctor's appointment. Jane had been crying as she lay in bed, trying to fall asleep, and she was worried she might be pregnant. Jane told her grandmother about the rape, but did not tell her that Hernandez had also squeezed her breasts, licked her nipples, and orally copulated her. Jane later testified at trial that she did not provide these details because, as soon as Jane told her grandmother about the vaginal penetration, her grandmother got angry and went to confront Hernandez.

The morning after the disclosure, Jane's mother brought her to the police station. Jane was subsequently interviewed twice by a police detective and once by a forensic interviewer. Jane consistently recounted that Hernandez penetrated her vaginally with his penis, but she did not always tell the interviewers that he also squeezed her breasts, licked her nipples, and licked her vagina.

The first police interview took place on January 25, 2021, the day Jane's mother first brought her to the police station. Jane felt nervous, scared, and uncomfortable. The detective who interviewed her described her as "very shy, very timid." "It was hard for her to make eye contact." Jane told the police detective that Hernandez put his penis in her vagina, but she did not report that he had touched her breasts or licked her nipples. When asked if Hernandez had put his mouth on her vagina, Jane specifically said no.

The second police interview took place the next day, January 26, 2021, at Jane's home. Jane felt more comfortable. But she nevertheless appeared to the police detective who interviewed her to be even more emotional. Jane told the interviewer that Hernandez had raped her, and also told her that he touched her breasts, licked her nipples, and licked her vagina.

The forensic interview took place approximately three weeks later, on February 16, 2021. Jane was "really scared" at this next encounter. She felt herself shaking at one point, and she remembered "[her] throat being completely closed off." She was "crying a lot" and "couldn't stop." One of the interviewers again described her as scared and "incredibly timid," "[v]ery withdrawn." Jane told the forensic interviewer that Hernandez vaginally penetrated her, but she did not tell her he had touched her breasts, licked her nipples, and licked her vagina.

A nurse conducted a forensic examination the same day as the forensic interview. The nurse made no findings one way or another as to whether Jane had been vaginally penetrated. This was "normal" given her age and that it had been two months since the assault.

Hernandez attempted to commit suicide on January 26, 2021, the same day as Jane's second police interview. He called 911 from a hotel room and told the operator he did not want to live anymore. He said he wanted to turn himself in to police because he had family problems.

Hernandez called a friend after the suicide attempt. During that call, Hernandez said, "I did something to my niece." His friend asked what he did, but Hernandez changed the subject and did not respond to further questions.

II.

*Charges, Convictions, and Sentence*

The San Bernardino County District Attorney charged Hernandez with one count of rape of a child under age 14 (Pen. Code,[1] § 269, subd. (a)(1); count 1), one count of forcible oral copulation of a child under 14 (§ 269, subd. (a)(4); count 2), and two counts of forcible lewd act on a child under 14 (§ 288, subd. (b)(1); counts 3 & 4).

On January 20, 2023, a jury convicted Hernandez on counts 1, 3, and 4. The jury was unable to reach a verdict on the forcible oral copulation count, and the court declared a mistrial as to that count.

The trial court sentenced Hernandez on March 1, 2023, to a total term of 31 years to life, consisting of 15 years to life on count 1, plus two consecutive 8-year middle terms on counts 3 and 4. Count 2, the forcible oral copulation count, was dismissed on the People's motion. Hernandez timely appealed.

DISCUSSION

I.

*Additional Background*

As detailed above, the prosecution charged Hernandez with four sex offenses against Jane based on allegations he: (1) vaginally raped her, (2) squeezed her breasts, (3) licked her nipples, and (4) licked her vagina. It is well-settled that "evidence of sexual offenses charged in the current prosecution" may be used "to show a propensity to commit other charged offenses in the same case." (*People v. Cruz* (2016) 2 Cal.App.5th 1178, 1185, italics omitted.) The trial court accordingly instructed the jury on the

---

[1]    Undesignated statutory references are to the Penal Code.

6

permissible use of propensity evidence to infer a general disposition to commit sex crimes. The court based its instruction on CALCRIM No. 1191B as follows:

> "The People presented evidence that the defendant committed the crimes of Aggravated Sexual Assault of a Child Under the Age of 14 - Rape by Force, Fear, or Threats, as charged in Count One; Aggravated Sexual Assault of a Child Under the Age of 14 - Oral Copulation by Force, Fear, or Threats, as charged in Count Two; and Forcible Lewd Act Upon a Child Under the Age of 14, as charged in Counts Three and Four.
>
> "If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in this case.
>
> "If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt."

Trial counsel for Hernandez specifically acquiesced to the use of this instruction when the trial court asked whether either side had an objection. During closing argument, the prosecutor also briefly read the language of this instruction to the jury without defense objection.

## II.

### *Merits Review Despite Failure To Object*

The People argue that Hernandez forfeited his instructional error claim by failing to object to the instruction at trial. "Generally, a party may not complain on appeal about a given instruction that was correct in law and responsive to the evidence unless the party made an appropriate objection."

7

(*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)  Under section 1259, however, there is no forfeiture of an instructional error claim on appeal when the substantial rights of the defendant have been affected.  "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)  We will therefore consider the merits of Hernandez's contention despite the lack of objection. Doing so, we find no error that could have affected Hernandez's substantial rights.

### III.

### *The Trial Court Correctly Instructed the Jury*

Hernandez contends the trial court erred when it instructed the jury that they were allowed to infer he had the propensity to commit sex offenses if they found he was guilty of committing at least one of the charged offenses beyond a reasonable doubt.  He contends CALCRIM No. 1191B does not correctly state the law under the particular circumstances presented here. "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law." (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  We find no error in our independent review.

Hernandez's argument acknowledges binding California Supreme Court authority.  First, he acknowledges there is a strong public policy in favor of instructing jurors to consider propensity evidence in cases involving sexual assault.  As explained by our high court, " '[t]he propensity to commit sexual offenses is not a common attribute among the general public. Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony.' " (*People v. Villatoro*

8

(2012) 54 Cal.4th 1152, 1164 (*Villatoro*).) "[C]ase law clearly shows that evidence that [a defendant] committed other sex offenses is . . . circumstantially relevant to the issue of his disposition or propensity to commit [such] offenses." (*People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*), italics omitted.)

Second, Hernandez acknowledges that our Supreme Court has specifically held that juries are permitted to consider evidence of a defendant's propensity to commit sexual offenses based on evidence the defendant committed other sexual offenses, and that this principle holds even when the other offenses have been simultaneously charged in the same prosecution. (*Villatoro, supra,* 54 Cal.4th at p. 1164.) As the Court explained, "[w]hether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence." (*Ibid.*)

Within the boundaries of these holdings, Hernandez argues there must be an exception to the rule allowing the jury to consider propensity evidence that applies in cases where multiple sex offenses have been charged and all of the offenses took place on the same occasion. In his view, an exception to the rule is required because "[p]ropensity evidence permits the jury to consider the fact that [a] defendant has engaged in conduct on one occasion as circumstantial evidence that he engaged in similar conduct on another occasion. It has no relevance in a case where all of the alleged conduct took place on a single occasion." (Italics omitted.) He asserts that "[i]nherent in [the] definition of propensity evidence is that [a] specific instance of conduct occurred on some occasion different than the charged offense." We disagree. Hernandez's definition of relevant character evidence is incorrect to the extent it places temporal restrictions on the jury's ability to infer propensity

9

from manifestations of a defendant's character that occur at the same time as the charged offense. This is not the law.

"Character evidence [is] sometimes described as evidence of a propensity or disposition to engage in a type of conduct." (*Villatoro, supra,* 54 Cal.4th at p. 1159.) Character evidence—a.k.a. propensity evidence—may be proven "in the form of an opinion, evidence of reputation, or evidence of specific instances of [a person's] conduct." (Evid. Code, § 1101, subd. (a).) Important here, a person's character *at the time of the charged offense* is the relevant consideration. (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 447 (*Shoemaker*).) It is true, as Hernandez points out, that in the case of "specific instances of [a person's] conduct," it is often appropriate to draw inferences " 'either forward or backward' " from manifestations of character during time periods that are earlier or later than the charged offense. (*Id.* at pp. 446, fn. 1 [quoting Evid. Code, § 1103], 447–448 [quoting 5 Wigmore, Evidence (Chadbourn rev. ed. 1974) § 1618, p. 595].) But it is not the case, as Hernandez contends, that conduct used to prove character evidence is exclusively limited to conduct that took place on another occasion. To the contrary, " '[c]haracter at an earlier or later time than that of the deed in question is relevant only on the assumption that [the individual's character] was substantially unchanged in the meantime.' " (*Shoemaker,* at p. 447, italics omitted.)

Thus, based on settled law, the trial court's instruction here accurately told the jury that if they found Hernandez guilty beyond a reasonable doubt of one of the charged sex offenses, they were permitted but not required to conclude he was a person who was disposed to commit other sex crimes. (*Villatoro, supra,* 54 Cal.4th at p. 1164.) This portion of the instruction was a correct statement of the law because evidence a defendant has committed a

10

sex crime is highly probative that the defendant has a disposition or propensity to commit these types of offenses. (*Falsetta, supra,* 21 Cal.4th at p. 915.) And indeed, the evidence here was potentially even more probative than the typical case precisely because the sex offenses all occurred on the exact same occasion. As noted, a person's character *at the time of the charged offense* is the relevant consideration. (*Shoemaker*, *supra*, 135 Cal.App.3d at p. 447.) The more remote in time a prior or subsequent sexual offense takes place, the less probative it is likely to be of the defendant's character at the time of the charged offense. (See *Falsetta,* at p. 917.) Because there was no significant gap in time between any of the sex offenses, a conclusion by the jury that Hernandez committed any one of the charged offenses would have been exceptionally probative of his character—including his disposition to commit sex crimes against young girls—at that exact point in time.

Hernandez's other criticisms of the instruction also lack merit. He claims the inferences allowed by the instruction in the instant case were "irrational," because "a single sexual assault charged as multiple discrete acts cannot logically establish a character trait to establish propensity to commit all of the charged acts." We disagree. We find it both logical and a matter of common sense for a jury considering multiple charges based on a variety of acts alleged to have taken place on a single occasion to draw the inferences discussed in CALCRIM No. 1191B. Here, for example, if the jury concluded Hernandez was guilty beyond a reasonable doubt of vaginally raping Jane, it is not an "irrational" inference to conclude he is the type of person who is disposed to commit other sex crimes against a girl under the age of 14, such as squeezing her breasts, licking her nipples, and licking her vagina. It is also not irrational to then consider this conclusion as weighing

11

in favor of concluding he did in fact commit these other alleged offenses as well.

Hernandez's final contentions are that the instruction requires jurors to engage in circular logic and encourages them to find victims who allege multiple sex acts more credible than those who allege a single offense. We are not persuaded. The instruction here clearly told the jury that any offense used to draw an inference of propensity must first be proven beyond a reasonable doubt. The instruction thereby contains a foundational requirement—in the form of a required independent factual finding made beyond a reasonable doubt—that must be met before jurors are permitted to draw an inference of propensity or witness credibility. Given this clear starting point for drawing any inference—a finding of guilt beyond a reasonable doubt with respect to one of the offenses—the instruction does not require circular logic, it does not encourage credibility findings where they are unwarranted, and it does not permit improper " 'bootstrapping of verdicts.' " (*Villatoro, supra,* 54 Cal.4th at pp. 1165, 1168.)

For all of these reasons, we conclude the jury was correctly instructed with CALCRIM No. 1191B. Having reached this conclusion, we do not need to reach or otherwise address prejudice.

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.